**INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, AFL–CIO, LOCAL 1575, by itself and representing Oscar Acevedo, et al., Plaintiffs,**

v.

**SEA–LAND SERVICE, INC., Defendant.**

**No. Civil 74–586.**

United States District Court, D. Puerto Rico.

Dec. 9, 1975.

---

Nicolás Delgado-Figueroa, Santurce, P. R., for plaintiffs.

McConnell, Valdés, Kelley, Sifre, Griggs & Ruiz-Suria, San Juan, P. R., for defendant.

## OPINION AND ORDER

TOLEDO, Chief Judge.

On May 17, 1974, plaintiff Union, on behalf of 235 stevedores, filed this lawsuit and on August 15, 1974, plaintiffs amended their complaint. Defendant filed its timely answer, raising numerous affirmative defenses.

Thereafter, on October 20, 1975, defendant filed a motion to dismiss and for summary judgment together with supporting affidavit and brief. On November 7, 1975, plaintiffs, pursuant to this Court's Order of November 6, 1975, filed a motion in opposition to summary judgment. No counter affidavits were filed by plaintiffs. The Court is of the opinion that the matter may be disposed of on the basis of the pleadings, and that no evidentiary hearing is necessary.

The complaint, as amended, alleges that, since 1958, plaintiffs have been improperly paid by defendant. Plaintiffs are longshoremen who have worked pursuant to collective bargaining agreements which call for all hours worked outside the period from 7:00 a. m. to 4:00 p. m., Monday through Friday, and on Sundays [1] and holidays, to be paid for at time and one half the regular rate of pay established in the collective bargaining agreement. Plaintiffs now state that when they were employed during shifts calling for the time and one half rate, and worked overtime, that said overtime should have been compensated for at what amounts to time and one half time and one half (i. e., two and one quarter times) the regular rate of pay.

Defendant has interposed three specific defenses covering three different periods of time covered by the complaint. The Court finds all three defenses to be meritorious.

### I. *The Period Prior to May 17, 1964.*

■ Defendant claims that even under the most favorable statute of limitations possibly applicable to this suit, plaintiffs may not sue for a period of more than ten years commencing with the date suit was

---

1. It appears that commencing October 1, 1974, Saturdays were also included.

filed. The Court finds no need at this time to decide the extent to which, if any, Puerto Rico's statute of limitations in wage claims applies to suits for violation of collective bargaining agreements brought under Title 29, United States Code, Section 185. For Title 29, Laws of Puerto Rico Annotated, Section 246d(b), entitled Limitations of Actions, clearly provides:

"(b) Where the employee is working with the employer, the claim shall include only the wages to which the employee may be entitled, on any score, during the last ten years immediately preceding the date on which he may institute the judicial action."

There is no doubt, therefore, that no action may be maintained for the period prior to May 17, 1964.

## II. *The Period From May 17, 1964 through September 30, 1971.*

As evidenced in the extracts from the collective bargaining agreements included as part of defendant's motion to dismiss and for summary judgment, said agreements for the period of time from May 17, 1964 through September 30, 1971, contained arbitration clauses whereby any claim such as that in the present case must be aired through the grievance and arbitration procedure. There was, during that time period, no provision for employees (or their union) to file such claims directly in any court.

■ It is well settled that a Federal District Court has no jurisdiction over matters that are arbitrable under a collective bargaining agreement and this Court must dismiss that portion of the complaint from May 17, 1964 through September 30, 1971,

inasmuch as plaintiffs should have availed themselves of the grievance and arbitration procedure. *Republic Steel Corporation v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965); *Satterwhite v. United Parcel Service*, 496 F.2d 448, (10 Cir. 1974), cert. den. 419 U.S. 1079, 95 S.Ct. 668, 42 L.Ed.2d 674 (1975).

## III. *The Period Since October 1, 1971.*

■ Defendant in its motion to dismiss and for summary judgment states that, commencing with the collective bargaining agreement effective October 1, 1971, and its successor, effective October 1, 1974, the plaintiffs had the option of bringing suits for wages in court, or utilizing the arbitration procedure provided in the collective bargaining agreement. Plaintiffs agree that this is so in their motion in opposition to summary judgment (Section III thereof). That being so, and plaintiffs having chosen to invoke this Court's jurisdiction, the Court should proceed to rule on the merits of the claim for the period of time in question. *Santiago Morales Rivera v. Sea Land of Puerto Rico, Inc.,* (Unpublished opinion No. 7359 of the First Circuit of December 4, 1969).

We come now to the crux of plaintiff's claim and find it wanting.

The pertinent wages and work hours provisions of the collective bargaining agreement in effect from October 1, 1971 through September 30, 1974, were as follows: [2]

"SECTION VIII—WAGES & WORK HOURS

a) Regular basic wages for men handling containerized cargo, or loading and unloading trailerships will be:

---

2. The 1971–1974 and 1974–1977 contracts were incorporated in the record by stipulation of the parties on November 24, 1975.

|  | 11–14–71 to 9–30–72 | 10–1–72 to 9–30–73 | 10–1–73 to 9–30–74 | |
|---|---|---|---|---|
| Hatch Tenders | $5.55 | $5.95 | $6.35 | |
| Gatemen | 4.16 | 4.56 | 4.96 | (Shift 7 a. m. to 3 p. m.) |
|  | 4.23 | 4.63 | 5.03 | (Shift 3 p. m. to 11 p. m.) |
|  | 4.31 | 4.71 | 5.11 | (Shift 11 p. m. to 7 a. m.) |
| Janitors | 3.60 | 4.00 | 4.40 | |

It is also agreed that all other classifications of employees covered by this collective bargaining agreement and employed by the COMPANY are those covered by the certification of the National Labor Relations Board (NLRB) in the case No. 24–RC–1971, subject to any clarification by the National Labor Relations Board (NLRB) and will receive the following basic regular wages per hour:

| 11–14–71 to 9–30–72 | 10–1–72 to 9–30–73 | 10–1–73 to 9–30–74 |
|---|---|---|
| $5.15 | $5.55 | $5.95 |

\*   \*   \*   \*   \*   \*

d) For payment of basic wages established in this Section; eight (8) hours per day (7:00 a. m. to 12:00 m. d. and 1:00 p. m. to 4:00 p. m. in vessel operations, maintenance and/or switchers; from 8:00 a. m. to 12:00 m. d. and 1:00 p. m. to 5:00 p. m. in warehouse operations) will be the regular work hours and forty (40) hours a week will constitute the regular work week. All other hours, including Sundays and Holidays, will be paid at time-and-a-half of the basic wages set for regular hours; except the Ninth Hour, which will be paid at double time of the basic salary in said shift for the preceding hour. The meal hours will not constitute part of the guarantees established in this Contract.

e) All hours worked after 4:00 p. m. in vessel operations, Maintenance and/or Switchers, and after 5:00 p. m. in the warehouse operations and on holidays and Sundays, will be paid at time-and-a-half of the regular basic salary."

The pertinent wages and work hours provision of the collective bargaining agreement in effect from October 1, 1974 through September 30, 1977, applicable to the plaintiffs herein are as follows:

"ARTICLE II.—WORK HOURS

A) The work week shall be from Monday through Friday. For the payment of the basic salaries that are fixed in this section, eight (8) hours a day (7:00 a. m. to 12:00 m. d. and 1:00 p. m. to 4:00 p. m. in all operations) shall be the regular hours of work and forty (40) hours weekly shall constitute the regular work week. All other hours including Saturdays, Sundays and holidays shall be paid at time and one-half of the established basic salary rate for regular hours; except the ninth hour and the meal hour, which shall be paid double the salary rate of the corresponding shift. The meal hours shall not form part of the guarantees established in this contract. (The time and one-half pertaining to Sunday shall be paid effective the date this contract is signed).

B) The regular work shift shall be the following:

1) Warehouse, vessels, maintenance and terminals from 7:00 p. m. to 12:00 m. d., and from 1:00 p. m. to 4:00 p. m.

\*   \*   \*   \*   \*   \*

ARTICLE III.—WAGES

Regular basic wages per hour for men handling mechanized cargo, or loading or unloading trailerships will be:

| | 10–1–74 to 9/30/75 | 10–1–75 to 9/30/76 | 10–1–76 to 9/30/77 | |
|---|---|---|---|---|
| Hatch–Tenders | $7.20 | $7.80 | $8.40 | |
| Gatemen | 5.81 | 6.41 | 7.01 | (Shift 7:00 a. m. to 3:00 p. m.) |
| | 5.88 | 6.48 | 7.08 | (Shift 3:00 p. m. to 11:00 p. m.) |
| | 5.96 | 6.56 | 7.16 | (Shift 11:00 p. m. to 7:00 a. m.) |
| Janitors | 5.25 | 5.85 | 6.45 | |

It is also agreed that all other classifications of employees covered by this Collective Bargaining Agreement and employed by the Company are those covered by the certification of the National Labor Relations Board (NLRB) in the case no. 24–RC–1971, subject to any clarification by the National Labor Relations Board (NLRB) and will receive the following basic regular wages per hour:

| 10–1–74 to 9–30–75 | 10–1–75 to 9–30–76 | 10–1–76 to 9–30–77 |
|---|---|---|
| $6.80 | $7.40 | $8.00 |

As can be readily perceived from the foregoing, there are no provisions for time and one half time and one half (overtime on overtime) the regular rate for work performed after eight hours or on Saturdays, Sundays and holidays.

The regular rate of pay is the one basic hourly rate provided for in the collective bargaining agreement for computing overtime rates for work performed outside the basic work day and for work performed on Saturdays, Sundays and holidays, and not overtime on overtime as plaintiffs herein contend.

The Fair Labor Standards Act of 1938 (hereinafter the Act), as amended, establishes in Section 7(e)(6) and (7), Title 29, United States Code, Section 207(e)(6) and (7):

"(e) As used in this section the 'regular rate' at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee, but shall not be deemed to include—

\* \* \* \* \* \*

(6) extra compensation provided by a premium rate paid for work by the employee on Saturdays, Sundays, holidays, or regular days of rest, or on the sixth or seventh day of the workweek, where such premium rate is not less than one and one-half times the rate established in good faith for like work performed in nonovertime hours on other days; or (7) extra compensation provided by a premium rate paid to the employee, in pursuance of an applicable employment contract or collective bargaining agreement, for work outside of the hours established in good faith by the contract or agreement as the basic, normal, or regular workday (not exceeding eight hours) or workweek (not exceeding the maximum workweek applicable to such employee under subsection (a) of this section, where such premium rate is not less than one and one-half times the rate established in good faith by the contract or agreement for like work performed during such workday or workweek."

The collective bargaining agreements covering October 1, 1971 through September 30, 1977, contain identical language as to the definition of regular workday and regular workweek for the payment of basic wages. The regular work hours are established as being eight (8) hours per day, from 7:00 a. m. to 12:00 m. d. and from 1:00 p. m. to 4:00 p. m. for vessel operations. The regular workweek consists of forty (40) hours. There is only one basic rate in the agreements which is applicable to work performed during the regular workday and the regular workweek.

Excluded from the basic or regular rate under the Act is any premium rate (here,

one and one half times the basic or regular rate) which is given as extra compensation paid for work by the employees on Saturdays, Sundays, holidays or for work performed outside the regular workday ("clock pattern" premium pay).

As set forth in the collective bargaining agreements, the premium rate of pay for work outside the regular work day or on Saturdays, Sundays or holidays is at the rate of one and one half times the basic rate.

The Act provides in Section 7(h), Title 29, United States Code, Section 207(h) that:

"Extra compensation paid as described in paragraphs (5)–(7) of subsection (e) of this section shall be creditable toward overtime compensation payable pursuant to this section."

As set forth in 7(e)(6) and (7) of the Act, Title 29, United States Code, Section 207(e)(6) and (7), in order for premium pay to be creditable towards overtime it must be paid at the rate of time and one half the basic or regular rate. The contract establishes one basic rate, without variation, for work performed from 7:00 a. m.—12:00 m. d. and from 1:00 p. m.—4:00 p. m., Monday through Friday, excluding holidays. Work performed outside the clock hours and on Saturdays, Sundays and holidays is compensated for at the rate of time and one half the basic rate, regardless of whether the employee was working in excess of eight hours daily or forty hours weekly. Expressed differently, an employee who commences work after 4:00 p. m. on weekdays or who commences work on any Saturday, Sunday or holiday would begin to receive the premium rate of time and one half the basic rate, notwithstanding the fact that such employee had performed no work prior to punching in.

Title 29, United States Code, Section 207(h) establishes that such premium pay is creditable towards any overtime actually worked by an employee.

On July 20, 1949, Congress enacted the so called "Overtime on Overtime Act", c. 352, Section 1, 63 Stat. 446 [3] to overcome the United States Supreme Court decision in *Bay Ridge Operating Co., Inc. v. Aaron*, 334 U.S. 446, 68 S.Ct. 1186, 92 L.Ed. 1502 (1948), reh. den. *Huron Stevedoring Corp. v. Blue*, 335 U.S. 838, 69 S.Ct. 11, 93 L.Ed. 390. *Bay Ridge* held that clock time, Saturday, Sunday and holiday premium pay was not overtime pay under the Act unless it happened to be paid for time worked in excess of daily or weekly basic working periods. (The applicable provisions of the collective bargaining agreements set out, supra, establish that the basic daily working period consists of eight hours from 7:00 a. m. to 12:00 m. d. and 1:00 p. m. to 4:00 p. m., and the basic work week consists of 40 hours from Monday through Friday).

The 1949 amendments to the Act gave premiums paid for clock time, Saturday, Sunday and holidays an overtime pay status.

The Code of Federal Regulations in interpreting the 1949 amendments to the Act are clear as to the payment of premium pay for Saturdays, Sundays and holidays being creditable towards overtime. Title 29, C.F.R., Section 778.203 states:

"Premium pay for work on Saturdays, Sundays, and other 'special days'.

Under section 7(e)(6) and 7(h) of the Act, extra compensation provided by a premium rate of at least time and one-half which is paid for work on Saturdays, Sundays, holidays, or regular days of rest or on the sixth or seventh day of the workweek (hereinafter referred to as 'special days') may be treated as an overtime premium for the purposes of the Act. If the premium rate is less than time and one-half, the extra compensation provided by such rate must be included in determining the employee's regular rate of pay and cannot be credited toward statutory overtime due, unless it

---

**3.** Repealed as a separate measure when the general amendments were adopted on October 26, 1949, c. 736, Section 7, 63 Stat. 912.

qualifies as an overtime premium under section 7(e)(5).

(a) "Special day" rate must be at least time and one-half to qualify as overtime premium; The premium rate must be at least 'one and one-half times the rate established in good faith for like work performed in nonovertime hours on other days'. Where an employee is hired on the basis of a salary for a fixed workweek or at a single hourly rate of pay, the rate paid for work on "special days" must be at least time and one-half his regular hourly rate in order to qualify under section 7(e)(6). If the employee is a pieceworker or if he works at more than one job for which different hourly or piece rates have been established and these are bona fide rates applicable to the work performed during nonovertime hours, the extra compensation provided by a premium rate of at least one and one-half times either (1) the bona fide rate applicable to the type of job the employee performs on the "special days", or (2) the average hourly earnings in the week in question, will qualify as an overtime premium under this section.

\*   \*   \*   \*   \*   \*

(b) Bona fide base rate required. The statute authorizes such premiums paid for work on 'special days' to be treated as overtime premiums only if they are actually based on a 'rate established in good faith for like work performed in nonovertime hours on other days.' This phrase is used for the purpose of distinguishing the bona fide employment standards contemplated by section 7(e)(6) from fictitious schemes and artificial or evasive devices as discussed in Subpart F of this part. Clearly, a rate which yields the employee less than time and one-half the minimum rate prescribed by the Act would not be a rate established in good faith.

\*   \*   \* ".

The 1949 amendments to the Act also contemplated that premiums paid for "clock pattern" time (between 4:00 p. m. and 7:00 a. m. on all except Saturdays, Sundays and holidays in the present case) are creditable towards overtime. The Code of Federal Regulations in interpreting Section 7(e)(7) of the Act, Title 29, United States Code, Section 207(e)(7) refers specifically to the longshore and stevedoring industries as being typical of those where premium pay for "clock pattern" time is creditable against overtime pay.

Title 29, C.F.R., Sections 778.204 and 778.-206 state:

"§ 778.204.—'Clock Pattern' premium pay.

(a) *Overtime premiums under Section 7(e)(7).* Where a collective bargaining agreement or other applicable employment contract in good faith establishes certain hours of the day as the basic, normal, or regular workday (not exceeding 8 hours) or workweek (not exceeding the maximum hours) standard applicable under section 7(a) and provides for the payment of a premium rate for work outside such hours, the extra compensation provided by such premium rate will be treated as an overtime premium if the premium rate is not less than one and one-half times the rate established in good faith by the contract or agreement for like work performed during the basic, normal or regular workday or workweek.

(b) *Premiums for hours outside established working hours.* To qualify as an overtime premium under section 7(e)(7) the premium must be paid because the work was performed "outside of the hours established \* \* \* as the basic \* \* \* workday or workweek' and not for some other reason. Thus if, the basic workday is established in good faith as the hour from 8:00 a. m. to 5:00 p. m. a premium of time and one half paid for hours between 5:00 p. m. and 8:00 a. m. would qualify as an overtime premium. However, where the contract does not provide for the payment of a premium except for work between midnight and 6:00 a. m. the premium would not qualify under this section since it is not a premium paid for work outside the established workday but only for certain special hours outside the established workday, most instances because they are undesirable hours. Similarly, where payments of pre-

mium rates for work are made after 5:00 p. m. only if the employee has not a meal period or rest period, they are not regarded as overtime premium; they are premiums paid because undesirable working conditions.

(c) *Payment in pursuance of agreement.* Premiums of the type which section 7(e)(7) authorizes to be treated as overtime premiums must be paid 'in pursuance of an applicable employment contract or collective bargaining agreement', and the rates of pay and daily and weekly work periods referred to must be established in good faith by such contract or agreement. Although as a general rule a collective bargaining agreement is a formal agreement which has been reduced to writing, an employment contract for purposes of section 7(e)(7) may be either written or oral. Where there is a written employment contract and the practices of the parties differ from its provisions, it must be determined whether the practices of the parties have modified the contract. If the practices of the parties have modified the written provisions of the contract, the provisions of the contract as modified by the practices of the parties will be controlling in determining whether the requirements of section 7(e)(7) are satisfied. The determination as to the existence of the requisite provisions in an applicable oral employment contract will necessarily be based on all the facts, including those showing the terms of the oral contract and the actual employment and pay practices thereunder.

§ 778.206—Premiums for work outside basic workday or workweek—examples.

The effect of section 7(e)(7) where 'clock pattern premiums are paid *may be illustrated by reference to provisions typical of the applicable collective bargaining agreements traditionally in effect between employers and employees in the longshore and stevedoring industries. These agreements specify straight time rates applicable during the hours established in good faith under the agreement as the basic, normal, or regular workday and workweek.* Under one such agreement, for example, such workday and workweek are established as the first 6 hours of work, exclusive of meal time, each day, Monday through Friday, between the hours of 8:00 a. m. and 5:00 p. m. Under another typical agreement, such workday and workweek are established as the hours between 8:00 a. m. and 12:00 noon and between 1:00 p. m. and 5:00 p. m.; Monday through Friday. Work outside such workday and workweek is paid for as premium rates not less than one and one-half times the bona fide straight-time rates applicable to like work when performed during the basic, normal or regular workday or workweek. *The extra compensation provided by such premium rate will be excluded in computing the regular rates at which the employees so paid are employed and may be credited towards overtime compensation due under the Act.* For example, if an employee is paid $2.00 an hour under such an agreement for handling general cargo during the basic, normal, or regular workday and $3.00 per hour for like work outside of such workday, the extra $1.00 will be excluded from the regular rate and may be credited to overtime pay due under the Act. Similarly, if the straight time rate established in good faith by the contract should be higher because of handling dangerous or obnoxious cargo, recognition of skill differentials, or similar reasons, so as to be $3.00 an hour during the hours established as basic or normal or regular workday or workweek, and a premium rate $4.50 an hour is paid for the same work performed during other hours of the day or week, the extra $1.50 may be excluded from the regular rate of pay and may be credited towards overtime pay due under the Act. Similar principles are applicable where agreements following this general pattern exist in other industries." (Emphasis supplied).

Plaintiffs claim that the basic rate for computing premium pay is the overtime rate and not the basic or regular rate of pay.

We have not been able to find any court case where overtime on overtime has been claimed since the 1949 amendments to the Fair Labor Standards Act which prohibit

the pyramiding of overtime compensation by means of computing such wages on the basis of premium pay.

Two arbitration cases have come to light, however, which squarely deal with the issue in the present case.

In *Milford Company of California*, 22 LA 249, the Board of Arbitration in interpreting the wage provisions of the collective bargaining agreement, which are similar to those of the collective bargaining agreements between the parties in the instant case, which called for a "clock time", Saturday and Sunday premium rate of one and one half times the regular rate, found that absent any provision to the contrary, such premium rate could not be considered as the regular rate for determining overtime wages for such hours or days.

In referring to Section 7(e)(7) of the Act, Title 29, United States Code, Section 207(e)(7), the Arbitration Board stated:

"The legislative history of this provision makes it clear that it was intended to offset the effect of the decision of the United States Supreme Court in *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446[, 68 S.Ct. 1186, 92 L.Ed. 1502] (1948) requiring the payment of statutory overtime rates for work already paid for at a time and one-half premium rate. While the facts of that case were distinguishable from those here involved, the problem was essentially the same. The statutory amendment quoted above does not preclude these parties from agreeing upon an arrangement requiring payment in the manner contended for by the Union; but it is clear that in the absence of such an agreement, set forth in clear and understandable language, the Company would not have to pay for overtime work after 6:00 p. m. at a rate in excess of 1½ times the classification rate established in Article XI. A majority of the Board of Arbitration does not read the language of Article X and XIII as expressing an agreement to include the night work premium in the regular rate for purposes of computing overtime pay. Accordingly,

we find in favor of the Company's position in the instant case."

In *Dow Hammond Co.*, 59 LA 449, the arbitrator found that overtime on holidays is payable at the rate of time and one half the regular rate only and not time and one half the holiday rate (overtime on overtime) as contended by the Union.

For the reasons heretofore expressed, it is ORDERED that:

1. The period of the complaint prior to May 17, 1964, is hereby dismissed as having prescribed.

2. The period of the complaint from May 17, 1964 through September 30, 1971, is hereby dismissed for failure to utilize the grievance and arbitration procedure provided by the collective bargaining agreement in effect during said period of time.

3. The period of the complaint since October 1, 1971, is dismissed for failure to state a cause of action.

The Clerk of the Court is directed to enter judgment accordingly.

IT IS SO ORDERED.