William E. BROCK, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

Judith WILAMOWSKY d/b/a Continental Word Processing, Defendant.

No. 85 Civ. 1103 (KTD).

United States District Court, S.D. New York.

July 16, 1986.

Patricia M. Rodenhausen, Acting Regional Sol., U.S. Dept. of Labor, New York City, for plaintiff; George R. Salem, Deputy Sol. of Labor, Manuel del Valle, Jonathan Kay, of counsel.

Miller, Cassidy, Larroca & Lewin, Washington, D.C., Manning, Raab, Dealy & Sturm, New York City, for defendant; Nathan Lewin, Randall J. Turk, Washington, D.C., William J. Dealy, New York City, of counsel.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

Plaintiff, William E. Brock, Secretary of Labor ("the Secretary"), United States Department of Labor ("Labor Department"), brings this action against defendant, Judith Wilamowsky, doing business as Continental Word Processing ("CWP"), alleging a willful violation of the overtime compensation and recordkeeping provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* (1982). Specifically, the Labor Department claims violations of sections 207, 211, 215(a)(2) and (a)(5). The Secretary seeks liquidated damages and back wages for defendant's temporary word processor employees from June 1, 1982 until the present and a permanent injunction restraining the defendant from violating the above sections.[1] Plaintiff moves for a partial summary judgment pursuant to Fed.R. Civ.P. 56(a), and defendant cross-moves for summary judgment. If defendant is found liable for backwages, the parties have agreed that the total amount due and owing defendant's employees in overtime compensation would be $75,797.68.

## FACTS

CWP is a temporary employment agency which provides word processing services to its clients on a 24 hour, round-the-clock, seven-days-a-week basis. For the purposes of this litigation, the parties agree that the temporary word processors are employees within the meaning of Section 3(e)(1) of the Fair Labor Standards Act. 29 U.S.C. § 203(e)(1) (1982).

CWP's main office is open and its full-time staff on duty, Monday through Friday, from 9:00 a.m. to 5:00 p.m. CWP receives calls from clients requesting temporary word processors for particular days and times. CWP keeps lists indicating an employee's level of skill and hours of availability. CWP's full-time employees, called counselors, are responsible for contacting the temporary employees to see if they are available for specific jobs. Between 200 and 300 word processors are employed by CWP per week. During any given workweek, a word processor may work for a number of different clients, and may work an unspecified number of hours during one or more of the following work periods:

Day: 8:00 a.m. to 5:00 p.m.;

Evening: 5:00 p.m. to 12:00 midnight; and

Night: 12:00 midnight to 8:00 a.m..

Word processors have the option of working different time periods from one day to the next and are not required to accept a particular job. The defendant allows that, " ... it is the individual word processor, not the agency, who controls when and how many hours he works." Defendant's Reply to Plaintiff's Second Memorandum of Law in Support of Plaintiff's Motion for Partial Summary Judgment, and to Plaintiff's Opposition to Defendant's Cross-Motion for Summary Judgment at 9 (hereinafter "Defendant's Reply Memo"). Thus, the number of hours and the time periods worked may vary from day to day and week to week.

The defendant pays its temporary word processors by the hour at a differing rate depending on which of the three time peri-

---

1. In settlement of one aspect of this case, CWP has agreed to pay $39,214.15 to its temporary proofreaders, stenographers and typists, and mag-card operators, for unpaid overtime compensation.

ods the employee works. The pay scale, per hour, in each of the time periods is as follows:

| Word Processor | 8 to 5 | 5 to 12 midnight | 12 midnight to 8 a.m. |
|---|---|---|---|
| Beginner | $10 | $13 | $16 |
| Intermediate | 11 | 14 | 17 |
| Advanced | 12 | 15 | 18 |

The 5:00 p.m. to midnight pay rate is one and a quarter times the day rate. The midnight to 8:00 a.m. rate is one and a half times the day rate. If a word processor works into a period of the day for which the pay rate is different, he or she is paid for those hours at the rate for that period or at the rate for the period immediately preceding, whichever is higher.

Both parties agree that any employee who works over forty (40) hours in a workweek is entitled to overtime pay and that the overtime pay should be one and one-half times the "regular rate" of pay as required by 29 U.S.C. § 207(a)(1). The parties disagree, however, as to how the regular rate of pay is to be determined.

Plaintiff also argues that CWP's recordkeeping practices do not comply with the requirements of 29 U.S.C. §§ 211(c) and 215(a)(5) as implemented by 29 C.F.R. §§ 516.2(a) and 516.7.

In May, 1984, the Labor Department conducted an investigation into CWP's recordkeeping practices and found that neither CWP's employee time sheets nor its computerized records indicated weekending totals for the hours worked per week. Nancy K. Lipson Affidavit, ¶¶ 1, 16 and 17. After CWP was informed that its recordkeeping forms were inadequate, it redid its computer program and since September 1984, has calculated weekending totals. Additionally, the defendant has used its old timesheet records to calculate the weekending totals and possible overtime due for all weeks back to June, 1982 pursuant to the Labor Department's request. Carol Chen Affidavit, February 18, 1986, ¶ 4, Judith Wilamowsky Affidavit, February 21, 1986, ¶¶ 12 and 13.

## DISCUSSION

### Regular Rate

Essentially, the parties' dispute centers on the manner in which the word processors' "regular rate" of pay is to be calculated.[2] Under Section 207(e) of the Fair Labor Standards Act, the "regular rate" includes "all remuneration for employment paid to, or on behalf of, the employee" excluding certain specified excep-

---

**2.** In the Stipulation of Facts as to which No Genuine Dispute Exists, 4–5, ¶¶ 8–11, the parties give the following example of how each side argues overtime payments should be calculated:

8. ... In its weekly sales recap for the week ending March 30, 1984, the defendant reported that Mr. Bruce Freburger worked on Job No. 5455 for a total of 53.5 hours. He was paid at three different rates, *viz.*, $12.00/hour for 36 hours of work, or a gross of $432.00; $15.00/hour for 16 hours of work, or a gross of $240.00; and $18.00/hour for 1.5 hours of work, or a gross of $27.00. The total wages paid for this week were $699.00.

9. Under the plaintiff's interpretation of the Act and the implementing regulations, Mr. Freburger should have been paid for work on Job No. 5455 at a regular rate of $13.06/hour for the hours under 40 hours of work, and a time and one-half rate of $19.59 for the hours over 40 hours of work. In this case that would be calculated as follows: (i) 40 hours of work at $13.06/hour, or a gross of $522.40; and (ii) 13.5 hours of work at $19.59/hour, or a gross of $264.47. Under plaintiff's interpretation of the Act and regulations, the total

amount that Mr. Freburger should have been paid was $786.87.

10. Under the plaintiff's interpretation of the Act and the implementing regulations, the defendant owes Mr. Freburger $87.87 in unpaid overtime compensation for the week ending March 30, 1984.

11. Under the defendant's interpretation of the Act and the implementing regulations, Mr. Freburger's overtime compensation for the 13.5 hours he worked in excess of 40 hours during the week ending March 30, 1984, should be computed as follows: 13.5 hours at $18.00/hour (one and one-half the regular rate of pay of $12.00/hour), or $243.00, less a credit of $267.00 for the premium rates paid (*i.e.*, $15.00/hour for 16 hours and $18.00/hour for 1.5 hours).

12. Under the defendant's interpretation of the Act and the implementing regulations, the defendant owes Mr. Freburger no additional overtime compensation for the week ending March 30, 1984. Indeed, defendant asserts that Mr. Freburger already was paid $24.00 more than the Act requires.

tions. CWP argues that its higher pay rates for evening and night work fall within exception 7's exclusion for clock-pattern compensation and that they should not be included in calculating the average rate of pay. Section 207(e)(7) excludes:

> extra compensation provided by a premium rate paid to the employee, in pursuance of an applicable employment contract or collective-bargaining agreement, for work outside of the hours established in good faith by the contract or agreement as the basic, normal, or regular workday (not exceeding eight hours) or workweek (not exceeding the maximum workweek applicable to such employee ...) where such premium rate is not less than one and one-half times the rate established in good faith by the contract or agreement for like work performed during such workday or workweek.

29 U.S.C. § 207(e)(7) (footnote omitted).

CWP argues that the rates paid to temporaries working the evening and night shifts is a premium rate which is "creditable toward overtime compensation payable pursuant to this section." 29 U.S.C. § 207(h). CWP further argues that it would have to pay overtime on overtime to meet the Labor Department's requirements.

█ The Labor Department characterizes CWP's higher rates as shift differentials, and argues they should be included in determining an average, weighted, "regular rate" of pay. I agree with the Labor Department, that CWP's pay rates are in fact shift differentials and do not fall within exception Section 207(e)(7).

CWP has no "applicable employment contract or collective bargaining agreement" determining in "good faith the basic, normal, or regular workday" as required by Section 207(e)(7). In their affidavits, several CWP employees indicate that they believed the "regular rate" of pay to be the amount paid for work performed between 8:00 a.m. and 5:00 p.m., Monday through Friday. An equal number of CWP employees indicate in their affidavits, however, that there was no understanding regarding what constituted either the normal workday or workweek. Although an employment contract need not be written, 29 C.F.R. § 778.204(c), courts have honored oral contracts only where the terms have been explicit. *Brennan v. Valley Towing Co., Inc.*, 515 F.2d 100, 106 (9th Cir.1975) (where there was no express oral agreement regarding the regular rate of pay, the court was required to calculate the average rate).

Given the nature of temporary wordprocessing work, it appears that although CWP's employees were aware of the company's pay rates for the different time periods, there was no agreement expressly establishing a regular workday, workweek, or a regular rate of pay for each period, within the meaning of section 207(e)(7). There is no contractual "basic, normal, or regular workday." Also, there is no "per se" workday since the temporary word processors can, and do, work any time of day, for any length of time, and for as many days as they choose.

█ Moreover, as CWP is arguing that its pay rates fall within an exception to the general rule, CWP has the burden of proving it meets the exception's requirements. *Donovan v. Brown Equipment & Service Tools, Inc.*, 666 F.2d 148, 153 (5th Cir.1982). CWP has not met this burden.

The Supreme Court has held that the "regular rate",

> is not an arbitrary label chosen by the parties; it is an actual fact. Once the parties have decided upon the amount of wages and the mode of payment the determination of the regular rate becomes a matter of mathematical computation, the result of which is unaffected by any designation of a contrary 'regular rate' in the wage contracts.

*Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424–25, 65 S.Ct. 1242, 1244–45, 89 L.Ed. 1705 (1945).

Also informative on this issue is the Code of Federal Regulations ("CFR") which states, "[t]he 'regular rate' of pay under the Act cannot be left to a declaration by

the parties as to what is to be treated as the regular rate for an employee; it must be drawn from what happens under the employment contract." 29 C.F.R. § 778.-108 (1985) (citation omitted).

The actual purpose of CWP's pay differentials is to induce word processors to work the less desirable hours. In order for the differential to qualify as an overtime premium under section 207(e)(7), the excess pay must be given because the work was performed outside the established basic workday, and not simply because the time worked was undesirable. 29 C.F.R. § 778.-204(b).[3] In actuality any portion of the day can be a temporary's normal workday. Thus, the following C.F.R. regulation is applicable:

> If the normal workday is artificially divided into a 'straight time' period to which one rate is assigned, followed by a so-called 'overtime' period for which a higher 'rate' is specified, the arrangement will be regarded as a device to contravene the statutory purposes and the premiums will be considered part of the regular rate.

29 C.F.R. § 778.202(c); *see also* 29 C.F.R. § 778.501.

■ The Labor Department's determination that CWP's premiums are shift differentials, and therefore, not creditable to overtime compensation, is entitled to considerable weight by this court, absent compelling evidence that it is incorrect. *Red Lion Broadcasting Co. v. FCC,* 395 U.S.

367, 381, 89 S.Ct. 1794, 1801, 23 L.Ed.2d 371 (1969); *Guardians Association v. Civil Service Commission of the City of New York,* 463 U.S. 582, 592, 103 S.Ct. 3221, 3227, 77 L.Ed.2d 866 (1983).

The Labor Department argues that CWP's regular rate of pay should be calculated by determining the employee's weekly salary, including all amounts earned in any of the three shifts, and then dividing that sum by the total number of hours worked that week. The resulting figure would be the regular rate of pay and any overtime for the week should be calculated using that figure. 29 C.F.R. § 548.3(b).[4] I agree that this is the proper method for determining the regular rate of pay and overtime.

CWP claims that by calculating the regular rate of pay as suggested by the Labor Department, it would in effect be paying overtime on overtime, a practice which was rejected when a clock-pattern pay structure was upheld in *International Longshoremen's Association, AFL–CIO Local 1575 v. Sea-Land Service, Inc.,* 430 F.Supp. 282 (D.P.R.1975). CWP's reliance on *Sea-Land* is misplaced as the cases are clearly distinguishable. *Sea-Land* involved a collective bargaining agreement that established a regular workday and workweek and brought the case within the Section 207(e)(7) exception. *Sea-Land* at 287, 289–90. There is no genuine clock-pattern arrangement in the present case, rather,

---

3. Section 778.204(b) provides in relevant part:
   (b) Premiums for hours outside established working hours. To qualify as an overtime premium under section 7(e)(7) the premium must be paid because the work was performed during hours "outside of the hours established * * * as the basic * * * workday or workweek" and not for some other reason. Thus, if the basic workday is established in good faith as the hours from 8 a.m. to 5 p.m. a premium of time and one-half paid for hours between 5 p.m. and 8 a.m. would qualify as an overtime premium. However, where the contract does not provide for the payment of a premium except for work between midnight and 6 a.m. the premium would not qualify under this section since it is not a premium paid for work outside the established workday but only for certain special

hours outside the established workday, in most instances because they are undesirable hours.

4. Section 548.3(b) reads:
   (b) A rate per hour which is obtained by averaging the earnings, exclusive of payments described in paragraphs (1) through (7) of section 7(e) of the Act, of the employee for all work performed during the workday or any other longer period not exceeding sixteen calendar days for which such average is regularly computed under the agreement or understanding. Such a rate may be used to compute overtime compensation for all the overtime hours worked by the employee during the particular period for which the earnings average is computed.

CWP has established different shifts, none of which is necessarily the regular workday for any given employee.

CWP also relies on *Brennan v. Valley Towing Co., Inc.*, 515 F.2d 100 (9th Cir. 1975) to support its argument that the evening-shift and the night-shift pay rate premiums should not be used to calculate the regular rate.[5] In *Valley Towing*, however, the employer and employees had established express agreements designating a regular workday and providing for overtime compensation. *Valley Towing* at 108. Because no such agreement exists in the instant case it is distinguishable.

The Labor Department further claims that CWP's violations were willful; therefore, the statute of limitations should be three years rather than two. The statute of limitations for unpaid overtime compensation and liquidated damages is governed by 29 U.S.C. § 255(a) which provides that an action

> may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action has accrued.

29 U.S.C. § 255(a).

In *Donovan v. Carls Drug Co., Inc.*, 703 F.2d 650 (2d Cir.1983), the Second Circuit Court of Appeals set out the standard for what constitutes a willful violation. The Court held that, "Employers 'willfully' violate FLSA when (1) they know that their business is subject to FLSA and (2) their practices do not conform to FLSA requirements." *Carls Drug* at 652; *Mar-*

*shall v. Erin Food Services, Inc.*, 672 F.2d 229, 231 (1st Cir.1982); *Marshall v. Sam Dell's Dodge Corporation*, 451 F.Supp. 294, 305 (N.D.N.Y.1978). The *Carls Drug* decision further states that "There is no separate requirement that employers know that they have violated a specific provision of the Act because such a rule would encourage employers to remain ignorant of FLSA rather than energetically to comply with it." *Carls Drug* at 652. Both parties have stipulated that CWP was subject to the FLSA. Thus, CWP knew it was subject to FLSA, and failed to conform to its requirements. Because CWP violated Sections 207(a)(1) and 215(a)(2), under these circumstances, the three year statute of limitations provided for in 29 U.S.C. § 255(a) applies. Thus, CWP will be liable for unpaid overtime beginning in June 1982.

The parties have agreed that the amount of overtime compensation owed the temporary word processors from June 1, 1982 to December 31, 1985 is $75,797.68. The Labor Department also seeks liquidated damages pursuant to 29 U.S.C. § 216.[6]

29 U.S.C. § 260 permits the court to refuse an award of liquidated damages where the violation was made in good faith, or where the defendant had reasonable grounds for believing its actions did not violate the FLSA. Moreover, the fact that CWP's violation was willful does not necessarily preclude a further finding that it acted in good faith.

> [I]f the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Stan-

---

**5.** CWP also relied on *Brock v. Two "R" Drilling Co.*, 772 F.2d 1199 (5th Cir.1985) which held that certain bonuses for after hours work were not includable in the regular rate of pay. On rehearing, however, the Fifth Circuit reversed itself and held that the bonuses were not paid strictly for work performed outside the normal workweek, and thus, the bonuses should have been included in determining the regular rate of pay. *Brock v. Two "R" Drilling Co.*, 789 F.2d

1177, 1179 (5th Cir.1986). The case, therefore, no longer supports CWP's position.

**6.** 29 U.S.C. § 216 provides in relevant part:

> (b) Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their ... unpaid overtime compensation, ... and in an additional equal amount as liquidated damages....

dards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in Section 216 of this title.

Whether to grant an award for liquidated damages is an issue within the court's discretion. *McClanahan v. Mathews*, 440 F.2d 320, 322 (6th Cir.1971).

In *Donovan v. Kaszycki & Sons Contractors, Inc.*, 599 F.Supp. 860 (S.D.N.Y.1984), the court held that "good faith," under 29 U.S.C. § 260, "requires at least an honest intention to ascertain what the Fair Labor Standards Act requires and to comply with it. 'Reasonable belief' is an objective standard." *Kaszycki* at 871. "The employer bears the burden of persuading the court that both good faith and a reasonable belief exist." *Id.* CWP is unable to meet this burden.

In support of its argument that it acted in good faith, CWP asserts that "[t]emporary agencies in the industry have always paid temporary word processors according to the same three-tiered clock pattern compensation arrangement at issue in this suit ..., without a single complaint." Wilamowsky Affidavit, ¶ 3. CWP further argues that its belief it was acting in accordance with the law was reasonable because there is little legal precedent to suggest otherwise. I disagree. Even given a dearth of case law on the issue, CWP could have looked to any of the following for guidance: (1) Labor Department regulations; (2) Agency interpretations of the regulations; or (3) advice from counsel. Any of these sources, if relied upon, would give an employer reasonable grounds for believing that its practices were not in violation of the Act. CWP sought neither an interpretation from the Labor Department nor advice from counsel, until after the Labor Department's investigation. The fact that CWP followed an industry-wide practice is insufficient to establish its good faith. By failing to take any other steps to ascertain the appropriateness of its pay practices, CWP failed to act in good faith within the meaning of the statute. CWP is

thus ordered to pay $75,797.68 in liquidated damages.

*Recordkeeping*

There is no question that until September 1984 CWP was in violation of the FLSA's recordkeeping requirements. Affidavit of Nancy K. Lipson, ¶¶ 16 and 17. The recordkeeping provision involved reads as follows:

(c) Every employer subject to any provision of this chapter or of any order issued under this chapter shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time, and shall make such reports therefrom to the Administrator as he shall prescribe by regulation or order as necessary or appropriate for the enforcement of the provisions of this chapter or the regulations or orders thereunder.

29 U.S.C. § 211(c). Section 215(a)(5) makes it unlawful to violate Section 211(c). Neither the statute nor the regulations prescribe any particular form of recordkeeping, however, 29 C.F.R. § 516.1(a) requires that certain types of information be included in the records.

The defendant failed to comply with section 516.2(a)(7) by not keeping records of the "[h]ours worked each workday and total hours worked each workweek ...." 29 C.F.R. § 516.2(a)(7). CWP's computerized records did not contain weekending dates or weekending hour totals. The employees' time sheets contained hour totals, but often combined more than one week's total hours. The total number of hours worked per week was not always totaled separately. Lipson Affidavit, ¶¶ 16, 17 and Exhibit 2. The failure to have each week totaled separately was a violation of the recordkeeping provisions.

CWP maintains that the information was ascertainable from the records it did maintain, and that it was not, therefore, in violation of the regulations. 29 C.F.R. § 516.7(a), however, requires that, "such records shall be made available within 72 hours

following notice from the Administrator or his duly authorized and designated representative." Although CWP could obtain the required information from its records, it had to search through more than two years worth of old timesheets and payroll cards to calculate its employees' weekly hour totals. Needless to say, the information could not be retrieved within the 72 hour period.

■ After the Labor Department's investigation of its recordkeeping practices, CWP reprogramed its computer system which enabled it to comply with the recordkeeping regulations. Thus, CWP's recordkeeping violations have been remedied, and permanent injunctive relief does not appear necessary. Plaintiff's request for injunctive relief regarding defendant's recordkeeping is denied.

### CONCLUSION

Because there are no triable issues of fact, summary judgment for plaintiff on the overtime compensation claim is granted. Injunctive relief for the recordkeeping violations is denied. Defendant is ordered to pay to plaintiff, on behalf of the temporary word processor employees, overtime compensation for the period June 1, 1982 to December 31, 1985 in the amount of $75,-797.68 and liquidated damages in the same amount as required by statute. Defendant is also ordered to pay any overtime compensation owed CWP's temporary employees after December 31, 1985. The amount due is to be determined by using plaintiff's weighted average regular rate formula.

SO ORDERED.